IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

GERARDO G. FIGUEROA    §
                       §
v.                     §         C.A. NO. C-10-393
                       §
MICHAEL J. ASTRUE      §

**MEMORANDUM AND RECOMMENDATION
TO DISMISS FOR LACK OF STATUTORY STANDING**

Plaintiff Gerardo Figueroa brought this action on December 10, 2010, seeking two years of back pay in Social Security disability payments.  (D.E. 1). On March 16, 2011, Defendant filed a motion for summary judgment, (D.E. 10), with a brief in support.  (D.E. 11).  Plaintiff filed a motion for summary judgment on April 25, 2011.  (D.E. 15).  On May 20, 2011, Defendant filed a response to Plaintiff's motion for summary judgment.  (D.E. 16).  Plaintiff filed a response to Defendant's motion for summary judgment on May 23, 2011.  (D.E. 17).  On June 6, 2011, a hearing was held to address the issues of standing and exhaustion of administrative remedies.  On June 27, 2011, the parties filed supplementary briefs. (D.E. 19, 20).  For the reasons that follow, it is respectfully recommended that the action be dismissed with prejudice for lack of statutory standing to appeal.

## I.  BACKGROUND

The sole issue presented for judicial review is whether Plaintiff's disability onset date was properly determined.  Accordingly, the factual background is

described only insofar as it is relevant to the resolution of that issue.

On August 27, 1999, at the age of fifty-three, Plaintiff applied for disability insurance benefits, alleging an onset date of December 31, 1997. Tr. 35, 105. Another application form submitted on August 31, 1999 notes that he became disabled from the workforce on May 22, 1996. Tr. 96.[1]  Plaintiff's claim was denied on November 4, 1999. Tr. 65-68.  On December 6, 1999, he enlisted Jay Honeycutt, a non-attorney[2] consultant who specializes in Social Security claims, to serve as his representative. Tr. 28-29.  The same day, Plaintiff requested reconsideration of the denial. Tr. 69.  The request was denied on February 18, 2000. Tr. 71-74.

On March 15, 2000, Plaintiff requested a hearing, which was held before Administrative Law Judge ("ALJ") Roy J. Richardson on January 8, 2001. Tr. 32-62, 75-81.  Prior to the hearing, Mr. Honeycutt submitted a detailed summary of the medical evidence supporting his client's claim. Tr. 32, 144-154.  At the hearing, ALJ Richardson confirmed with Plaintiff that his alleged onset date had been changed to November 30, 1997 on his own motion. Tr. 33.  Mr. Honeycutt informed ALJ Richardson that Plaintiff was "receiving veteran's service disability

---

[1] Plaintiff suggests that May 22, 1996 was the initial alleged onset date, and December 31, 1997 the amended. (D.E. 15, at 18).  Whichever order they came in, the difference is immaterial.

[2] At various places in the record, including the transcripts of both ALJ hearings, Tr. 32-62; 407-30, Mr. Honeycutt is erroneously identified as an attorney.

because of the post-traumatic stress."  Tr. 34.

On March 29, 2001, ALJ Richardson issued an unfavorable decision on Plaintiff's claim, finding him not disabled within the meaning of the Social Security Act.  Tr. 14-25.  Plaintiff sought review of the denial by the Appeals Council through Mr. Honeycutt on April 5, 2001.  Tr. 5-6, 9-11.  On January 11, 2002, the Department of Veterans Affairs ("VA") determined that Plaintiff was entitled to disability payments from that agency with an onset date of May 1, 2001.  Tr. 293.  Mr. Honeycutt sent the VA's findings to the Appeals Council on January 17, 2002.  Tr. 12.  He then sent a brief to the Appeals Council on July 20, 2002, outlining his arguments against ALJ Richardson's decision.  Tr. 289-292.  In an undated decision issued sometime thereafter, the Appeals Council declined to review the claim.  Tr. 5-7.

On September 19, 2002, Plaintiff filed a pro se action in this Court seeking reversal of ALJ Richardson's judgment.  Figueroa v. Barnhart, C-02-408 (S.D. Tex. 2002), at (D.E. 1).  He claimed in that complaint that he was "totally disabled to do any type of work since September 2, 1999," and asked that he be granted benefits calculated from that date forward.  Id. at 3, 6.  On March 10, 2003, upon the joint motion of the parties, ALJ Richardson's decision was reversed and the case remanded for further proceedings.  Id. at (D.E. 19, 20, 21).  The Appeals Council vacated ALJ Richardson's decision on April 5, 2003, and remanded the

case for further proceedings and development of the record.  Tr. 308-09.

Prior to the second hearing, Mr. Honeycutt again submitted a brief in support of his client's application.  Tr. 327-331.  On March 11, 2004, the hearing was held before ALJ Brian Corrigan.  Tr. 407-30.  Plaintiff appeared along with Mr. Honeycutt.  Tr. 407.  In the first few moments of the hearing, the following exchange transpired:

> ALJ: We did have a prehearing conference in this case lasting approximately 20 minutes and initially the Claimant's representative submitted a Motion to Amend the onset date to January 1 of '99 from May 22 of '96, but I directed that [sic] to submit the motion to the March the 1st of 2003 which is six months and two days prior to the first real good psychological evaluation that we have with limitations that, as I understood the medical doctor in the prehearing, that those could be applied at -- back six months prior to the evaluation, six months and two days.  That is well within the date last insured.  It is a Title II case only.  The date last insured is December 31 of 2006.  So the motion is to amend the onset date of March the 1st of 2003.  Is that correct counsel?
>
> ATTY: Yes, Your Honor.
>
> ALJ: Have you discussed this with your client?
>
> ATTY: Yes, I have.
>
> ALJ: Have you explained the potential adverse impact on benefits payable with that amendment?
>
> ATTY: Yes, sir.
>
> ALJ: And he agrees to that amendment?

4

> ATTY: Yes, sir.
>
> ALJ: Well, I'm going to go ahead and approve that motion.  The onset date is hereby amended to March the 1st of 2003.

Tr. 407-08.

Later in the hearing, Plaintiff confirmed that he was getting slightly more than $2,100 per month from the VA.  Tr. 411-12.  ALJ Corrigan reminded him that the VA has a different definition of disability than the Social Security Administration, noting that "[t]hey don't require that you can't do any work."  Tr. 412.  ALJ Corrigan asked Dr. Harold Briggs, a medical expert testifying at the hearing, whether Plaintiff could be considered disabled within the meaning of the Social Security Act prior to March 1, 2003.  Tr. 422.  Dr. Briggs responded in the negative, explaining that "most of [Plaintiff's] problems as far as the psychiatric have been in the moderate range and ... we don't have a [Residual Functional Capacity evaluation] done back in those times."  Id.  He added that Plaintiff's physical conditions would not justify an earlier onset date either.  Tr. 423.

Shortly thereafter, ALJ Corrigan asked Plaintiff when the VA found him disabled and he replied that it was "approximately" two years earlier.  Id.  Mr. Honeycutt added that, "[t]o be exact, it was May the 1st of 2001."  Id.  ALJ Corrigan then asked Dr. Briggs if "we have evidence to that effect that would ... take it that far back" and he answered that they did not.  Id.  At the close of the

hearing, ALJ Corrigan announced that he intended to award benefits.  Tr. 428.  Mr.

Honeycutt then asked one more question of Dr. Briggs, inquiring whether

Plaintiff's "testimony corroborate[d] ... the possibility of a finding of an earlier

onset."  Id.  Before Dr. Briggs could respond, ALJ Corrigan asked Mr. Honeycutt

to "refrain from asking that question the way you have done it....  [T]here is always

a possibility, but I have got to rely on the medical evidence of record and so does

the doctor.  So rephrase your question to conform with Social Security law in that

regard."  Tr. 429.  The following exchange then ensued:

> ATTY: Does the Claimant's testimony corroborate the
> findings of the psychological?
>
> ME: Well, he certainly has post-traumatic stress disorder.
>
> ATTY: That wasn't my question.  I said, does it
> corroborate?
>
> ME: I don't know how to answer your question.
>
> ALJ: ... The evaluation that we have here from the
> psychologist giving all these limitations, is that consistent
> with the way the Claimant has described his limitations
> today?
>
> ME: Yes.

Id.  Mr. Honeycutt declined to ask any further questions or make any additional

statements.  Id.

On March 23, 2004, ALJ Corrigan issued a decision, noting in the

introductory section of his opinion that "[t]he claimant amended [the] alleged date of disability to March 1, 2003" and then finding, after a review of the medical evidence, that Plaintiff was entitled to disability payments calculated from that date forward.  Tr. 301-07.

On April 26, 2004, Plaintiff appealed the determination of the disability onset date, asserting only that he had been "found to be totally disabled by the VA on [May 1, 2001] [and] this was ignored by Social Security."  Tr. 300.  The Appeals Council declined to assume jurisdiction over the case on October 6, 2010. Tr. 297-99.  In the Appeals Council decision, Administrative Appeals Judge Nellie A. Hutt offered a brief explanation for the ALJ's decision, noting that the Social Security Administration and the VA employ different criteria in judging disability, and that the medical evidence prior to March 1, 2003 was insufficiently thorough and insufficiently definitive to justify a disability determination.  Tr. 297.  Judge Hutt concluded by observing that "[a]s the claimant requested a change of disability onset to March 1, 2003, the favorable decision did not discuss the medical evidence prior to that date; however, the Administrative Law Judge did consider the Veterans Administration findings of disability in evaluating the claimant's impairments."  Id.

On December 10, 2010, Plaintiff filed this action, stating in his one-page pro

se[3] filing that his "main complaint is that Social Security has denied me [two] years back pay."[4]  (D.E. 1, at 1).  At a December 9, 2010 hearing regarding his motion to proceed in forma pauperis, he indicated that he receives about $1,500 per month in Social Security benefits as well as about $2,800 per month in veterans' benefits. (D.E. 5, at 1).

## II. LEGAL STANDARDS

Judicial review of the Commissioner's decision regarding a claimant's entitlement to benefits is limited to two questions: (1) whether substantial evidence supports the Commissioner's decision; and (2) whether the decision comports with relevant legal standards.  See Carey v. Apfel, 230 F.3d 131, 135 (5th Cir. 2000) (citations omitted).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (citation omitted); accord Carey, 230 F.3d at 135.  The Fifth Circuit has described this burden as more than a scintilla, but less than a preponderance.  Leggett v. Chater, 67 F.3d 558, 564 (5th Cir. 1995) (citations omitted).  A finding of "no substantial evidence" occurs "only where there is a conspicuous absence of credible choices or no contrary medical evidence."

---

[3] Plaintiff filed his complaint pro se, (D.E. 1), but subsequently obtained counsel, (D.E. 12), through whom he made all his filings after the initial complaint.

[4] The only other claim asserted in the complaint is that Plaintiff's medical records have not been returned to him by the Social Security Administration despite his request more than a month earlier, (D.E. 1, at 1), a claim that neither party has briefed at summary judgment.

Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988) (per curiam) (citation omitted).

If the Commissioner's findings are supported by substantial evidence, the Court must defer to the Commissioner and affirm the findings.  See Masterson v. Barnhart, 309 F.3d 267, 272 (5th Cir. 2002) (citation omitted).  In applying the substantial evidence standard, courts scrutinize the record to determine whether such evidence is present.  They do not, however, re-weigh the evidence, try the issues de novo, or substitute their judgment for that of the Commissioner.  Id.; Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).  Factual conflicts that exist in the record are for the Commissioner and not the Court to resolve.  Masterson, 309 F.3d at 272.  It is incumbent upon the Court to look at the evidence as a whole and take into account the following factors: "(1) objective medical facts; (2) diagnoses and opinions of treating and examining physicians; (3) claimant's subjective evidence of pain and disability; and (4) claimant's age, education, and work history."  Wren v. Sullivan, 925 F.2d 123, 126 (5th Cir. 1991) (per curiam) (citation omitted).

### III.  DISCUSSION

The parties move for summary judgment on the merits.  (D.E. 11, 15).

### A.     Plaintiff Failed To Exhaust Administrative Remedies But Defendant Has Waived The Argument.

Federal jurisdiction over claims by plaintiffs appealing the denial of Social Security disability benefits flows exclusively from 42 U.S.C. § 405(g).  See Weinberger v. Salfi, 422 U.S. 749, 757 (1975).  Because that provision requires exhaustion of administrative remedies, federal courts "should not review the Commissioner's final decision unless the claimant has exhausted" them.  McQueen v. Apfel, 168 F.3d 152, 155 (5th Cir. 1999) (citation omitted).  Exhaustion requires presentment of each claim to the ALJ.  See Jackson v. Apfel, 234 F.3d 246, 246-47 (5th Cir. 2000) (per curiam) (citation omitted), vacated on other grounds sub nom. Jackson v. Massanari, 534 U.S. 801 (2001).

Plaintiff manifestly failed to exhaust the issue of his onset date before the ALJ.  Indeed, he not only declined to object, he actually proposed, through his representative, the chosen date.  Tr. 407-08.  If Defendant elected to litigate the issue at any stage of the case, dismissal would be required.  Somewhat surprisingly, however, he has not.  Asked, at the June 6, 2011 hearing, whether Plaintiff is legally entitled to raise the issue of his onset date in federal court, Defendant replied that he "thought" so.  Asked whether he had properly exhausted

10

administrative remedies, he answered affirmatively with no equivocation.  To

support his intuition, he referenced the fact that Plaintiff raised the issue of his

onset date before the Appeals Council.  However, exhaustion does not require a

claimant to broach every issue at the Appeals Council.  <u>Sims v. Apfel</u>, 530 U.S.

103, 112 (2000) (plurality opinion).  Instead, it requires the claimant to present the

claim to the ALJ.  <u>See</u> <u>Jackson</u>, 234 F.3d at 246-47.

     Nevertheless, exhaustion of administrative remedies can be waived by the

Commissioner, so long as there is a "'final decision' by the [Commissioner] with

respect to the claim of entitlement to benefits."  <u>Mathews v. Eldridge</u>, 424 U.S.

319, 329 (1976) (citing 42 U.S.C. § 405(g)).  Although the Fifth Circuit has

intimated that the Commissioner's failure to raise an exhaustion argument does not

waive the issue, <u>Dinger v. Apfel</u>, 196 F.3d 1257, 1999 WL 800036, at *1 (5th Cir.

Sept. 16, 1999) (per curiam) (unpublished) (dismissing Social Security appeal <u>sua</u>

<u>sponte</u> for lack of subject matter jurisdiction where plaintiff failed to raise an issue

before Appeals Council, and noting that there was "no reason to waive the

exhaustion requirement") (citing <u>Paul v. Shalala</u>, 29 F.3d 208, 210 (5th Cir. 1994);

<u>Giannakos v. M/V Bravo Trader</u>, 762 F.2d 1295, 1297 (5th Cir. 1985) (per

curiam)); <u>Dove v. Apfel</u>, 176 F.3d 479, 1999 WL 155658, at *1 (5th Cir. Mar. 9,

1999) (per curiam) (unpublished) (holding same and citing same), here Defendant

has not simply omitted the argument, he has explicitly taken the position that Plaintiff did exhaust administrative remedies.  By choosing to take this unusual position, Defendant has waived the issue.  Accordingly, it is respectfully recommended that Plaintiff failed to exhaust administrative remedies, but that Defendant has waived the issue.

**B.  The Action Should Be Dismissed With Prejudice For Lack Of Statutory Standing To Appeal.**

**1.  Plaintiff's motion for summary judgment and summary judgment response brief are irrelevant to the threshold question.**

Plaintiff's motion for summary judgment is, somewhat bafflingly, devoted largely to attacking various elements of ALJ Richardson's unfavorable March 29, 2001 decision.  Among other things, it critiques him for improperly discounting Plaintiff's credibility, (D.E. 15, at 10), for ignoring evidence, <u>id.</u> at 11, for failing to resolve inconsistencies in–and failing to develop–the record, <u>id.</u> at 15-16, for unjustifiably dismissing medical opinions, <u>id.</u> at 16, and, perhaps most astonishingly, for applying the wrong legal standard in his refusal to find Plaintiff's conditions disabling.  <u>Id.</u> at 19-20.[5]

---

[5] Other accusations leveled by Plaintiff at the Social Security Administration are broadly phrased and do not specify the guilty party, but seem to only apply to ALJ Richardson.  For instance, he expresses irritation that neither "the SSA or the ALJ ever contacted or subpoenaed for testimony, the 30-year spouse of Figueroa or the individual named on" his forms, a criticism that would seem irrelevant to ALJ Corrigan, who found Plaintiff's complaints credible.  Indeed, it is especially ironic that Plaintiff dwells on credibility determinations at such length when the

Plaintiff's focus on ALJ Richardson's decision appears to be premised on the profoundly misguided view, expressed only in passing and never fully elaborated, that his conclusions "likely [gave] weight to the subsequent ALJ's determination of onset [on] March 1, 2003." Id. at 17. Though it would still be a stretch, this might be a plausible inference to draw if ALJ Corrigan's determination of the onset date was grounded on a decision to discount the same evidence that ALJ Richardson discounted. And if it was, Plaintiff could conceivably have a tenable claim. See generally O'Connor v. Heckler, 613 F. Supp. 1043, 1046 (S.D.N.Y. 1985) ("By expressly relying on the summary and evaluations of ALJ Poverstein's vacated opinion, the Appeals Council gave weight to irrelevant factors such that it constituted a 'clear error of judgment.'") (citation omitted).

Even this argument would be a difficult one to win, as it would depend upon the presumption that ALJ Corrigan abdicated his legal duty to engage in de novo review of the case after vacature of ALJ Richardson's opinion. See Futia v. Astrue, No. 1:06-CV-961, 2009 WL 425657, at *8 (N.D.N.Y. Feb. 19, 2009) (unpublished) ("an ALJ making a decision in a case on remand from the Appeals Council is to consider the case *de novo* when the Appeals Council has vacated [an]

---

one finding he now disputes was proposed by his own representative and thus stemmed from a favorable view of his credibility. See Tr. 306 (ALJ Corrigan concluding that Plaintiff's "subjective allegations [were] ... generally credible" despite adverse findings by state medical consultants).

13

ALJ's previous decision") (citation omitted).  There is no reason to assume such an abdication generally, and particularly not here, where ALJ Corrigan came to the opposite conclusion on the ultimate question of disability than did his colleague.

In any event, Plaintiff does not make this argument.  Nor does he propose any reason why ALJ Richardson's consideration of the record "likely" influenced ALJ Corrigan's decision.  Instead, he simply asserts that it must have, and then sets about establishing the credibility of the evidence indicating an earlier disability date.  Although Plaintiff's response to Defendant's motion for summary judgment demonstrates a slightly more appropriate focus, inasmuch as it at least targets the only valid, relevant ALJ ruling, he still completely skips over the pivotal initial inquiry.  For with ALJ Corrigan, as with ALJ Richardson, Plaintiff proceeds directly to his consideration of the evidence.  In so doing, he fails to deal with the much more basic question in this case.  ALJ Corrigan's dating of Plaintiff's disability was first and foremost based on Plaintiff's own motion to amend his onset date to March 1, 2003.  Tr. 407-08.  Consequently, the threshold issue here is whether that motion forecloses remand in and of itself.

### 2. Plaintiff has no statutory standing to appeal.

The principle that a party must have suffered some injury by a ruling in order to appeal it is one deeply rooted in the federal judicial system.  See Deposit

Guaranty Nat. Bank, Jackson, Miss. v. Roper, 445 U.S. 326, 333 (1980) ("A party

who receives all that he has sought generally is not aggrieved by the judgment

affording the relief and cannot appeal from it.") (citations omitted).  Because

district courts reviewing Social Security benefit decisions by the Commissioner

perform an appellate function, see, e.g., Primeco Personal Communications v. City

of Mequon, 242 F. Supp. 2d 567, 574 (E.D. Wis.) (citing 42 U.S.C.

§ 405(g)), aff'd, 352 F.3d 1147 (7th Cir. 2003), plaintiffs in such cases must

possess the same standing required of a litigant who appeals to a federal appellate

court.  See Forney v. Apfel, 524 U.S. 266, 271 (1998) (quoting Roper on appellate

standing in Social Security appeal context); see also Buck v. Sec'y of Health and

Human Servs., 923 F.2d 1200, 1203 (6th Cir. 1991) ("In cases where ... the

Secretary issues a decision that is fully favorable to the claimant, the claimant

cannot seek judicial review.  If the individual has fully prevailed on his or her

claim [for disability benefits and supplemental security income], he or she has no

standing to appeal because he or she has received all the relief sought...."); Jones v.

Califano, 576 F.2d 12, 18 (2d Cir. 1978) ("Section 405(g) assumes as a condition

for judicial review that the determination by the Secretary ... will be adverse to the

claimant of benefits.  It makes no provision for judicial review of a determination

favorable to the complainant.").

Applying this rule, district courts have consistently declined to review claims identical to the one asserted here, i.e., where a plaintiff's only claim on appeal challenges the determination of an onset date he himself submitted.  See Bruno v. Astrue, No. 09 Civ. 4690, 2010 WL 5653398, at *4 (S.D.N.Y. Sept. 16, 2010) (unpublished) ("Here, provided the Court accepts Plaintiff's last-amended onset date, it appears that the Court would lack jurisdiction over Plaintiff's claim, as she would have received all of the benefits to which she could have been entitled, subsequent to that date.") (unpublished), adopted by 2011 WL 308372 (S.D.N.Y. Jan. 28, 2011) (unpublished); see also Abdullah v. Comm'r of Soc. Sec., No. 07-CV-12340, 2008 WL 564977, at *1 (E.D. Mich. Feb. 28, 2008) (unpublished) (no jurisdiction over claim, as ALJ's decision was fully favorable in light of onset date submitted by plaintiff through counsel).

While courts often discuss lack of standing to appeal favorable Social Security claims in terms of Article III standing, see, e.g., Bruno, 2010 WL 5653398, at *4; Abdullah, 2008 WL 564977, at *1, the issue is more aptly characterized as one of statutory standing pursuant to the rules of "'federal appellate practice.'"  See Camreta v. Greene, __ U.S. __, 131 S. Ct. 2020, 2029 (2011) (quoting Roper, 445 U.S. at 333).  That is to say, Plaintiff does not lack Article III standing, as he manifestly retains "the necessary personal stake in the

appeal," id. (citing Roper, 445 U.S. at 334), but he is filing an action not contemplated by the statute under whose authority he sues. See Jones v. Califano, 576 F.2d at 18.

Defendant misunderstands the standing issue implicated by this case, limiting his briefing on the question to a short discussion of Article III standing to appeal. (D.E. 19, at 3). Though Defendant rightly believes Plaintiff to possess such standing, he misses the mark when he suggests that Plaintiff "had the right" to take his claim to federal court, "odd" though his decision may be. Id. Plaintiff had no such right. His appeal is more than "odd," it is impermissible. For despite having Article III standing, he plainly lacks statutory standing.

As for Plaintiff's supplemental brief, he does at least address the appropriate type of standing, noting "the 'prudential practice of declining to hear appeals by prevailing parties.'" (D.E. 20, at 2) (citing Camreta, 131 S. Ct. at 2024 ). He argues that he is entitled to an exception to the practice because of his "personal stake" and because the policy at issue is "of sufficient importance [to his] economic interest." Id. In support of his argument, he relies principally upon Social Security Ruling ("SSR") 83-20, 1983 WL 31249 (1983); Ivy v. Sullivan, 898 F.2d 1045, 1048 (5th Cir. 1990); and Spellman v. Shalala, 1 F.3d 357, 361 (5th Cir. 1993).

Plaintiff's first argument for the granting of an exception to the prudential standing doctrine–that he has a "personal stake" in the appeal–says nothing about whether he has statutory standing.  If it did, the distinction between statutory standing and Article III standing would lose all meaning.  His second argument–that there is a compelling policy reason to craft an exception–is a more accurate statement of the law, but not of his own case.

As an initial matter, Plaintiff's account of the evidence regarding the onset date does not align with the record.  With considerable understatement, and with a passive sentence that appears designed to diffuse any blame that might be directed at Plaintiff himself, he asserts "that there existed some confusion regarding" the onset date, mentioning two opposing dates that he proposed at various times.  (D.E. 20, at 4-5).  In fact, Plaintiff has alleged <u>seven</u> different disability onset dates over the course of his Social Security proceedings and court filings, with a nearly seven-year range from the earliest to the latest: May 22, 1996 (Tr. 96); November 30, 1997 (Tr. 33); December 31, 1997 (Tr. 105); January 1, 1999 (Tr. 407-08); September 2, 1999 (D.E. 1, at 3, 6); May 1, 2001 (Tr. 300); March 1, 2003 (Tr. 407-08).  There is indeed "some confusion" over the onset date, but it stems entirely from Plaintiff's own fluctuating estimates, and it does not inspire confidence in his latest proposal.

In a more serious distortion of the record, Plaintiff claims that "the onset date of disability was arrived at in an <u>unrecorded - off the record</u> pre-hearing conference making it impossible to evaluate any inferences made at that time or whether there was a legitimate medical basis even considered" for the date.  (D.E. 20, at 6) (emphasis in original).  The onset date was not "arrived at" during the pre-hearing conference, it was simply discussed, and the details of the discussion were recounted by ALJ Corrigan on the record at the outset of the hearing.  Tr. 407. March 1, 2003 had no legal significance until Mr. Honeycutt confirmed, on the record, that his client agreed to the date.  Tr. 407-08.  Moreover, determining the "medical basis" for the date is far from "impossible," as ALJ Corrigan explicitly noted that the decision was made with reference to the quality of the earlier psychological examinations.  <u>Id.</u>  Finally, and perhaps most importantly, Plaintiff's reiterated complaint that ALJ Corrigan's view of the psychological reports "is not a medical opinion" is quite right, and quite irrelevant, for he confirmed his impression with Dr. Briggs, thus providing an ample "medical basis" for the date. Tr. 422-23.

With respect to Plaintiff's legal argument for an exception to prudential standing requirements, the law is not on his side.  In <u>Camreta</u>, the Supreme Court held that a government official is entitled to appeal a decision granting him

qualified immunity when the ruling also concludes that he violated a plaintiff's constitutional rights.  131 S. Ct. at 2032.  The policy reason justifying the exception was the important need for courts to clarify the scope of constitutional rights and guide officials in the lawful exercise of their discretion.  Id.  In Roper, an exception was made for plaintiffs appealing the denial of class certification after receiving tendered payments–in their individual capacities–from defendants.  445 U.S. at 327.  The policy motivation there was the need for courts to adjudicate procedural rulings, collateral to the merits, that adversely affect the interests of parties who are nevertheless benefitted by the ultimate decision.  Id. at 336.

Plaintiff's supplemental brief points only to "the economic interest of Figueroa" as the corresponding policy reason to justify an exception here.  (D.E. 20, at 2).  As a preliminary matter, a personal financial interest, highly individualized and specific, is clearly not a policy.  There are no actual policy reasons, properly understood, that militate in favor of granting Plaintiff's request. On the contrary, the efficient administration of an overburdened Social Security system, and the efficient adjudication of Social Security appeals in the federal courts, demand a policy that discourages, not encourages, claimants from attempting a second bite at the apple when they receive everything they ask for from the Administration.  See, e.g., Del Toro v. Astrue, No. 08-cv-2765, 2010 WL

749870, at *4 (D. Colo. Mar. 3, 2010) (unpublished) ("It would undermine

substantially the administrative process to permit a claimant to Monday-morning

quarterback such decisions [as alleged onset dates] when they do not pan out as

hoped, especially when an ALJ has been assured that the decision to amend was

fully informed and voluntary."); <u>Tolliver v. Astrue</u>, No. 3:09-CV-372, 2010 WL

3463989, at *6 (E.D. Va. Sept. 3, 2010) (unpublished) ("'[T]he ALJ is not required

to assume or surmise that a circumstance or condition exists without the plaintiff

first alleging [it].  To determine otherwise would require the ALJ to consider every

detail of a claimant's medical record without a particular issue being raised....

Such an analysis would overly burden the ALJ and render the system

ineffective.'") (citation omitted).  The uniform rejection of claims such as

Plaintiff's underscores the importance of that policy, and he provides no reason to

reverse it.  <u>See</u>, <u>e.g.</u>, <u>Buck</u>, 923 F.2d at 1203; <u>Jones v. Califano</u>, 576 F.2d at 18;

<u>Bruno</u>, 2010 WL 5653398, at *4; <u>Abdullah</u>, 2008 WL 564977, at *1.

Turning to the substance of Plaintiff's argument and the significance of his

cited authorities, SSR 83-20 helps him in theory, but not in practice.  That ruling

instructs ALJ's that an "individual's allegation [of the onset date] ... is significant

in determining onset <u>only</u> if it is consistent with the severity of the condition(s)

shown by the medical evidence."  1983 WL 31249, at *1 (emphasis added).  On its

face, it could be read to suggest that ALJs have a responsibility to verify the accuracy of an alleged onset date, and that such a duty can be invoked even by a claimant whose proposed onset date is credited.

Nevertheless, this is not how the Ruling has been applied.  In the vast majority of cases, courts cite the language from SSR 83-20 to reverse ALJ's only when they <u>declined</u> to adopt the claimant's alleged onset date.  The overwhelming trend is not a coincidence, it is a signal that SSR 83-20 does not contemplate being turned to the benefit of a plaintiff whose suggested onset date was adopted and benefits awarded on its basis.  <u>See</u>, <u>e.g.</u>, <u>Pepe v. Astrue</u>, No. 10-336, 2010 WL 5609463, at *8-9 (D. Minn. Dec. 23, 2010) (unpublished) (applying SSR 83-20 to remand to the ALJ when he rejected an amended onset date without explanation), <u>adopted</u> <u>by</u> 2011 WL 177211 (D. Minn. Jan. 20, 2011) (unpublished).

This application of SSR 83-20 conforms to the overall scheme of the Social Security system.  <u>Every</u> significant finding by an ALJ, after all, must be supported by substantial evidence, not just the disability onset date.  <u>See</u>, <u>e.g.</u>, <u>Randall v. Astrue</u>, 570 F.3d 651, 662 (5th Cir. 2009) (per curiam).  It would be patently unreasonable, however, to extrapolate from this axiomatic rule that an ALJ has a duty to scour the medical record for a nearly infinite number of potential disabling conditions that have no apparent relevance to his allegations.  <u>See</u> <u>Tolliver</u>, 2010

WL 3463989, at *6.  Similarly, if it is possible for claimants to waive claims by

failing to administratively exhaust remedies, as the Fifth Circuit has unequivocally

instructed, Jackson, 234 F.3d at 246-47, then there are at the very least some

circumstances in which the requirement that an ALJ's conclusions be substantially

supported by the evidence is simply unenforceable in federal court.

A wide search of relevant case law reveals only a small handful of decisions

to support the proposition impliedly relied upon by Plaintiff, none of which are

governed by Fifth Circuit precedent, and none of which are factually analogous to

the case at hand.  Most saliently, in terms of distinguishing features, they each

involve situations in which, for one reason or another, the decision to adopt the

alleged onset date deprived the claimant of a benefit being sought in the initial

application.  See, e.g., Goodson v. Bowen, 639 F. Supp. 369, 373-74 (W.D.N.C.

1986) (alleged onset date resulted in a favorable finding in terms of disability

benefits, but an unfavorable finding in terms of social security income).  Strikingly,

the only case cited by Plaintiff in which a federal court permitted a claimant to

challenge an onset date he himself submitted contains a fact pattern nearly identical

to Goodson in terms of the partially favorable, partially unfavorable determination

by the Administration.  See Elliot v. Comm'r of Soc. Sec., No. 6:07-cv-1509, 2009

WL 33532, at *1-3 (M.D. Fla. Jan. 5, 2009) (unpublished) (plaintiff awarded

Social Security Income and Disability Insurance Benefits, but then stripped of latter by Administration because date last insured was earlier than amended onset date).  Indeed, one of the few cases to cite <u>Goodson</u> summarized it, and agreeing decisions, in those very terms.  <u>Clark v. Bowen</u>, No. 86-1751, 1988 WL 79543, at *11 (D. Mass. July 13, 1988) ("Presented with similar circumstances, other courts have held that the Secretary improperly focused on the disability onset date alleged in the application <u>in deciding that the claimant was not eligible</u> for benefits.") (unpublished) (emphasis added).

These are far different scenarios than Plaintiff's, in which a claimant appeared at a hearing, with a representative, in full possession of all the evidence that he now relies upon to challenge the onset date, received literally everything he asked for from the ALJ, and then decided to assail the onset date he himself submitted.  The fact that <u>Goodson</u> and <u>Clark</u> concerned only <u>partially</u> favorable decisions renders them virtually irrelevant for purposes of answering the question of statutory standing to appeal, where the fully favorable nature of the appealed ruling is the most crucial factor.  <u>See</u> <u>Roper</u>, 445 U.S. at 333 (citations omitted).

The question of representation is significant in its own right.  <u>See</u> <u>McCall v. Astrue</u>, No. 05 Civ. 2042, 2008 WL 5378121, at *16 n.40 (S.D.N.Y. Dec. 23, 2008) (unpublished) (suggesting that right to challenge the proposed onset date

may be limited to individuals who go unrepresented at their administrative

hearings).  Recognizing the issue's importance, Plaintiff strives to show that he is

entitled to the more liberal standards afforded uncounseled claimants.  (D.E. 20, at

7).  Mr. Honeycutt is not a licensed attorney, he argues, and therefore Plaintiff was,

for all intents and purposes, unrepresented at the hearing.  Id.  To support the

argument, he looks to Jones v. Barnhart, 372 F. Supp. 2d 989 (S.D. Tex. 2005).  Id.

There, a paralegal appeared at a hearing instead of an attorney, and the plaintiff

was found to be "not represented by counsel," placing "a heightened duty to

develop the record" on the ALJ.  Jones, 372 F. Supp. 2d at 1006 n.4 (citing Kane v.

Heckler, 731 F.2d 1216, 1219 (5th Cir. 1984)).  Instead, Plaintiff suggests that Mr.

Honeycutt was even less prepared than a paralegal would have been, as he likely

was not "well versed in the Federal Rules of Civil Procedure."  (D.E. 20, at 7).  He

submits that the ALJ failed to satisfy his heightened duty to develop the record

because he never "made clear" what the "adverse impact" of the amended onset

date was.  Id.

Unfortunately for Plaintiff's argument, the "adverse impact" represented by

a later onset date is abundantly clear on its face to a layperson, and would be

particularly obvious to a representative who specializes in Social Security claims.

One need not understand the nuances of statutory standing to comprehend the basic

principle that an application for disability benefits will, at most, yield payments

starting on the day proposed by the claimant.  That commonsense proposition is all

that Plaintiff must have digested in order to now conclude that he is not legally

entitled to seek review of the onset date in federal court.  Likewise, it is not clear

why Plaintiff insinuates that his ignorance of the Federal Rules of Civil Procedure

played any role in the defective pleading.

      Contrary to Plaintiff's belief, the legal issue at the heart of this case does not

hinge on "the nuances of what is a fairly complicated procedure."  (D.E. 20, at 6)

(citing Elliot, 2009 WL 33532, at *3).  In Elliot, the plaintiff was awarded Social

Security Income and Disability Insurance Benefits on the basis of her amended

onset date, and the Appeals Council then stripped her of the latter because it turned

out that her date last insured was earlier than her amended onset date.  Elliot, 2009

WL 33532, at *1.  The legal issues implicated by the controversy in Elliot–the

interrelationships between the two disability programs, the onset date, the date last

insured, the ALJ, and the Appeals Council–does constitute "a fairly complicated

procedure," but those implicated by Plaintiff's do not.  That a person will only get

as much as they ask for is a principle familiar to individuals from all walks of life,

it is not exclusive to the province of Social Security law.  There is no reason to

believe that Mr. Honeycutt failed to explain this simple notion to his client, and no

reason to believe that his client failed to understand it.

Furthermore, the footnote from <u>Jones</u> does not represent a binding legal rule, as it was issued by a district court and as the Fifth Circuit decision on which it relied, <u>Kane v. Heckler</u>, 731 F.2d 1216, 1218 (5th Cir. 1984), concerned a claimant who appeared at her hearing with <u>no</u> representative, not a non-attorney representative. Indeed, some courts have explicitly declined to treat Social Security claimants counseled by paralegals as though they were unrepresented. <u>See</u> <u>Hudson v. Heckler</u>, 755 F.2d 781, 784-85 (11th Cir. 1985) (per curiam) ("While a paralegal may not possess all the legal expertise of an attorney, we are unprepared in this case to treat a paralegal like unrepresented and often unsophisticated claimants completely unfamiliar with the law or with agency practice."). Others adopt a sliding scale approach, imposing a heightened duty upon ALJ's when dealing with claimants who have non-attorney representatives, but not as heightened as that attaching to completely uncounseled claimants. <u>See</u> <u>Rivera v. Barnhart</u>, 379 F. Supp. 2d 599, 604 (S.D.N.Y. 2005) (citation omitted).

As a legal matter, it is thus far from clear that Mr. Honeycutt's lack of formal legal credentials imposed a higher duty on ALJ Corrigan such that remand would now be appropriate. Given the essential role that non-attorney representatives play in the Social Security process, the better-reasoned position is

that any advocate qualified to appear on behalf of a client at an administrative

hearing should be treated alike for purposes of judicial review of an ALJ.  See

Ellison v. Barnhart, 355 F.3d 1272, 1276-77 (11th Cir. 2003) (per curiam) ("to the

extent that Ellison maintains that his representative's status as a non-attorney

imposed upon the ALJ a heightened duty to fully develop the record, Ellison is not

entitled to relief because he does not challenge the qualifications of his

representative") (citations omitted).  Indeed, Mr. Honeycutt, given his

specialization and his amply demonstrated diligence, was almost certainly better

versed in Social Security law than would be many fully accredited attorneys (or,

presumably, many paralegals) unaccustomed to practicing in administrative law

courts.

Although there may be circumstances in which the lack of a law degree

constitutes a significant impairment, this is not one of them.  Quite to the contrary,

Mr. Honeycutt ably represented Plaintiff through more than four years of Social

Security proceedings, filing numerous well-organized briefs, as well as diligently

examining witnesses and articulately speaking on his behalf at two different

hearings.  Due in no small part to his services, Plaintiff ultimately received the

benefits he sought for so long.  As confirmed throughout the record, Mr. Honeycutt

had detailed knowledge of the Social Security process at every stage, and

employed that knowledge to assist his client throughout the process.  There is no reason to assume that the onset date issue was any different.

Lastly, Plaintiff's entire argument concerning the question of his representation at the hearing depends upon the assumption that ALJ Corrigan failed in some way to develop the record.  Id.  That assumption is simply not borne out by the transcript, as ALJ Corrigan explained on the record why he thought March 1, 2003 was the most appropriate onset date, confirmed Plaintiff's agreement, and elicited expert testimony from Dr. Briggs to verify it.  If ALJ Corrigan did have the same duty to develop the record that applies to unrepresented plaintiffs, he satisfied that duty, as the record was sufficiently developed.  See Brock v. Chater, 84 F.3d 726, 728 (5th Cir. 1996) ("When a claimant is not represented by counsel, the ALJ owes a heightened duty to 'scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'") (citation omitted).

Returning to the substantive dispute over whether a claim such as Plaintiff's is ever permissible, Goodson is unpersuasive.  Tellingly, the Goodson court declined to explore the possibility that different factors might apply when the alleged onset date is accepted as opposed to when it is rejected by an ALJ:

> In most cases where the alleged onset date and the actual onset date are not the same, the actual onset date will

> probably be subsequent to the alleged onset date.  In that
> situation, the Secretary is clearly not bound by the
> alleged onset date....  This court can see no reason that
> the rule should be different when the actual onset date is
> prior to the alleged onset date.

639 F. Supp. at 373 (internal citation omitted).  The first problem with this

formulation is that it constructs a strawman.  The issue is not whether an ALJ is

<u>bound</u> by an alleged onset date when the actual date turns out to be earlier, at least

in the sense that he cannot, in his ruling, conclude that it was earlier than that

alleged.  The issue is whether a claimant has the legal right to challenge, in

retrospect, an onset date that he himself selected.

Nevertheless, to the extent <u>Goodson</u> implies that the answer to the second

question is always affirmative, it is mistaken.  For though the <u>Goodson</u> court failed

to see them (or even acknowledge their potential existence), there are in fact good

reasons for such a line to be drawn, and other courts have recognized as much.

<u>See</u>, <u>e.g.</u>, <u>Del Toro</u>, 2010 WL 749870, at *4.  The concerns articulated by such

courts, arguably less compelling in <u>Goodson</u> and its allies, where there was some

reason to doubt the plaintiff's interest or competence in submitting the onset date,

are unquestionably persuasive here, and an adoption of the rule suggested by the

broad language of <u>Goodson</u> would do significant harm to them.

It is worth reiterating that no Fifth Circuit decision has spoken favorably of

the position staked out by <u>Goodson</u>.  Instead, the Fifth Circuit has had a far different emphasis, explaining, in one of the cases relied upon by Plaintiff, that an ALJ "<u>must use</u> the claimant's statement alleging when disability began as the starting point in determining the onset of ... disabilities." <u>Ivy</u>, 898 F.2d at 1048 (emphasis added) (citation omitted).  The <u>Ivy</u> court further noted that "a claimant's onset date may be <u>rejected only</u> if reasons are articulated and the reasons given are supported by substantial evidence." <u>Id.</u> (emphasis added) (citation omitted).  This framing of the issue creates a definite presumption that a claimant's alleged onset date represents the most favorable estimation of his disability, and that SSR 83-20, as well as the general requirement of substantial evidence to support the ALJ's findings, exist only to protect him from the unjustified <u>rejection</u> of that proposal.

Plaintiff's other main case citation, <u>Spellman</u>, likewise offers him no relief.  There, the plaintiff alleged an onset date of September 8, 1982, and was awarded benefits dating from October 1, 1985.  1 F.3d at 359-60.  The Fifth Circuit remanded the case, noting that "the Appeals Council failed to explain why October 1, 1985 was the proper onset date, and nothing in the record suggests that October 1, 1985 was significant with regard to Spellman's disability." <u>Id.</u>  The court therefore deemed the date "arbitrary." <u>Id.</u>  March 1, 2003 is not an arbitrary onset date for Plaintiff.  He proposed it, the ALJ confirmed his understanding of its

implications, a medical doctor verified its appropriateness, and the Administration's reasons for selecting it were explained at his hearing and by the Appeals Council. The record contains a clear indication of why that date "was significant with regard to [Plaintiff's] disability," namely, his own amendment, the medical reports, and Dr. Briggs' testimony. Spellman has no bearing on the disposition of Plaintiff's action.

The only other Social Security case cited by Plaintiff in his argument regarding standing,[6] Atkins v. Chater, 74 F.3d 1237, 1995 WL 783427 (5th Cir. Dec. 1, 1995) (per curiam) (unpublished), actually confirms the weakness of his position. As Plaintiff notes, that decision interpreted Spellman to require "that the ALJ consult with the Medical Advisor ... in cases in which ... the entitlement issue turns on the date of the disability's onset." (D.E. 20, at 3). As an initial matter, it is not clear what it means for "the entitlement issue" to "turn[] on the date of the disability's onset," and even less clear that such a formulation aptly characterizes Plaintiff's situation, given that he was found entitled to benefits and awarded them with reference to his own proposed onset date.

More to the point, to the extent Spellman and Atkins required ALJ Corrigan to consult with a medical expert concerning Plaintiff's onset date, that requirement

---

[6] Plaintiff also cites several decisions for general propositions of administrative law, (D.E. 20, at 4), none of which speak to the standing issues involved in this case.

was fully satisfied.  Tr. 422-23 (ALJ Corrigan asking Dr. Briggs whether Plaintiff could be considered disabled prior to March 1, 2003 and Dr. Briggs responding in the negative because "most of [Plaintiff's] problems as far as the psychiatric have been in the moderate range and ... we don't have a [Residual Functional Capacity] done back in those times" and because his physical conditions would not justify an earlier onset date either).

The only conceivable argument against dismissal for lack of standing would be one challenging the validity of the motion to amend.  See Bruno, 2010 WL 5653398, at *5.  Plaintiff, however, conceded at the June 6, 2011 hearing that there are no grounds to believe any coercion occurred, and a review of the transcript confirms the soundness of his view.  The closest thing to a hint of impropriety in the discussion of the motion to amend is ALJ Corrigan's remark that he "directed that [sic] to submit the motion to the [sic] March the 1st of 2003."  Tr. 408 (emphasis added).  Although his use of an imperative is perhaps slightly peculiar, this is far too vague and ambiguous a statement with which to substantiate a claim that he coerced the motion to amend the onset date out of Plaintiff or his representative.  See Shivel v. Astrue, 260 F. App'x 88, 92-93 (10th Cir. 2008) (unpublished) ("Mr. Shivel's contention that the ALJ purposefully prolonged the administrative process so as to coerce him into amending his onset date is mere

speculation.").  Indeed, even if ALJ Corrigan's statement were read as expressing encouragement to Plaintiff or his counsel to submit the amendment, that alone would not demonstrate coercion or any other impropriety.  See Fleming v. Astrue, No. 09-CV-902, 2010 WL 1838245, at *13 (S.D. Cal. May 5, 2010) (unpublished) ("the ALJ's suggestion that Plaintiff's wife amend the alleged onset date did not constitute bias or deprive Plaintiff of a fair hearing").

There is not only an absence of evidence suggesting coercion, there is compelling evidence that ALJ Corrigan dutifully ensured that Plaintiff was knowingly and voluntarily amending his onset date.  He asked his representative whether he discussed the amendment with his client, whether he mentioned the "potential adverse impact on benefits payable with that amendment," and whether his client had agreed to it.  Tr. 408.  It is difficult to imagine clearer and more persuasive evidence showing a lack of coercion.  Plaintiff has supplied no reason to doubt the veracity of the transcript, or the truthfulness of his representative's assertions at the hearing.  Given that he was described as present, and that he in fact testified shortly after this exchange, he was presumably cognizant of the amendment and fully able to object or instruct his representative to withdraw the motion.  See generally Del Toro, 2010 WL 749870, at *4 ("I find plaintiff's amendment [to the alleged onset date] to be conclusive because he specifically

34

affirmed to the ALJ at the hearing that he had been afforded adequate time to discuss the matter with his attorney and was amending of his 'own free will and volition.'") (citation omitted).  Moreover, he was surely aware of the VA's conclusion regarding the onset of his disability shortly after it was reached on January 1, 2002, and therefore had every reason to urge ALJ Corrigan to consider that agency's determination at the hearing more than two years later.  Indeed, if Plaintiff's otherwise-misguided attack on ALJ Richardson's opinion demonstrates anything relevant to this action, it is that he was fully capable of arguing for an earlier onset date at the second hearing, as his argument to that effect now relies almost exclusively on the alleged evidentiary failures of the <u>first</u>.  This reading of the record is significantly strengthened by the fact that the VA determination was discussed in detail at the second hearing.

There is likewise no indication that Plaintiff was unduly pressured by his representative to assent to the amendment, or that the representative otherwise failed to satisfy his duty, the only other imaginable grounds for now questioning the motion.  <u>See</u> <u>Gaskin v. Comm'r of Soc. Sec.</u>, No. 09-13243, 2011 WL 1097634, at *5 (E.D. Mich. Feb. 25, 2011) (unpublished) ("While plaintiff alleges that the amended onset date was due to ineffective assistance of counsel, other than the bald statement that counsel was ineffective, plaintiff offers no support [for] this

claim."), adopted by 2011 WL 1042268 (E.D. Mich. Mar. 22, 2011) (unpublished).

Reduced to its essence, Plaintiff's complaint is simply a demand that ALJs be forced to conduct searching reviews of the record so as to determine whether counseled claimants' proposed onset dates are fair enough to their own interests, and that federal courts force them to even after they have issued fully favorable decisions. He has not presented a single case to support that proposition. Nor has he presented a single explanation for his glaring failure to register an objection to the onset date. To accommodate his demand would be to impose substantial and unjustified burdens on an already overworked administrative system, and would transform limited judicial review into micro-management of the Social Security Administration.

It is also worth commenting, at a more pragmatic level, on Plaintiff's particular situation. He is an individual whose demands for disability payments were substantially met by two separate federal agencies, and he now insists that the second has an obligation to be as generous as the first, despite his own agreement to the contrary at the time of his hearing. This is not a reasonable request by any measure.

Accordingly, it is respectfully recommended that Plaintiff lacks statutory standing to prosecute this appeal.

**3.    The Court may <u>sua sponte</u> raise the issue of statutory standing to appeal.**

As a general matter, courts may, on their own motion, consider standing to appeal.  <u>See</u> <u>Ward v. Santa Fe Indep. Sch. Dist.</u>, 393 F.3d 599, 603 (5th Cir. 2004) ("We sua sponte conclude that the plaintiffs lack standing to appeal the judgment in their favor.") (citation omitted).  That authority appears to extend to the statutory standing context.  <u>See</u> <u>Director, Office of Workers' Compensation Programs, Dep't of Labor v. Newport News Shipbuilding & Dry Dock Co.</u>, 514 U.S. 122, 125, 136 (1995) (unanimously affirming federal circuit court that <u>sua sponte</u> raised issue of statutory standing).  At least one other court dismissed a Social Security appeal for the same defect at issue here without the Commissioner requesting it.  <u>See</u> <u>Louis v. Comm'r of Soc. Sec.</u>, No. 6:07-CV-557, 2008 WL 1882707, at *2 (N.D.N.Y. Apr. 10, 2008) (unpublished) ("Although not raised by Defendant, an additional basis for dismissing Plaintiff's Complaint is that he was the recipient of a fully favorable decision from the Appeals Council.  The decision was fully favorable because Plaintiff, through counsel, asserted an onset date of May 1, 1981, and the Appeals Council's decision found that Plaintiff has been disabled since May 1, 1981."), <u>adopted by</u> 2008 WL 1882706 (N.D.N.Y. Apr. 24, 2008) (unpublished), <u>aff'd</u> 349 F. App'x 576 (2d Cir. 2009) (per curiam) (unpublished).  On balance, there is authority for the proposition that the federal courts are empowered to dismiss

37

appeals for lack of statutory standing on their own motion, there is reason to believe that the power extends to the legal context of this case, and there is no authority holding otherwise.

Accordingly, it is respectfully recommended that the Court sua sponte dismiss the action with prejudice[7] for lack of statutory standing to appeal.

## IV.  RECOMMENDATION

For the foregoing reasons, it is respectfully recommended that this action be dismissed with prejudice for lack of statutory standing.

Respectfully submitted this 19th day of July 2011.

_____

BRIAN  L. OWSLEY
UNITED STATES MAGISTRATE JUDGE

---

[7] Because Plaintiff's lack of statutory standing results from his failure to challenge the onset date before the ALJ, the defect cannot be cured through anything short of filing another application with the Social Security Administration alleging an earlier onset date, and it must be dismissed with prejudice.  See HyperQuest, Inc. v. N'Site Solutions, Inc., 632 F.3d 377, 381 (7th Cir. 2011) (affirming district court that dismissed with prejudice for lack of statutory standing).  Such a dismissal would not, of course, prejudice Plaintiff's right to file such an application and, if it is rejected, to appeal that ruling to federal court.  See, e.g., Mills v. Apfel, 244 F.3d 1, 9 (1st Cir. 2001) (where issue waived at ALJ level, "there is nothing that prevents a new application directed to the future"); Guerpo v. Amresco Residential Mortg. Corp., 13 F. App'x 649, 651 (9th Cir. 2001) (per curiam) (unpublished) (construing "with prejudice" narrowly so as not to preclude subsequent action in the event plaintiff "acquired statutory standing").

38

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to 28 U.S.C. § 636(b)(1); Rule 72(b) of the Federal Rules of Civil Procedure; and Article IV, General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto. Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).